JUNE TERM, 1869. 551

Pierce vs. The St. Paul & Milwaukee R. R. Co., impleaded with others.

PIERCE VS. THE MILWAUKEE & ST. PAUL R. R. Co., impleaded with others.

24 551
74 497

*Mortgage binding subsequently acquired property — Vendor's lien not enforceable as against such mortgage.*

1. A railroad company was authorized by its charter to borrow money, etc., and to execute "such securities, in amount and kind," as it might deem expedient. *Held*, that it might mortgage its entire road, with its franchises, and all its property, including all future acquisitions for the use of its road.

2. Said company mortgaged its entire line of road, and all the property, rights and franchises appertaining thereto, including, among other things specifically enumerated, the right of way, and land occupied by said road; all rolling stock, and other personal property appertaining to said line of road and "*then belonging to the company, or thereafter to be acquired, and all right thereto and interest therein ; and also all future right thereto and interest therein,*" which said company should acquire. The mortgage also contained a covenant by the mortgagor for further reasonable and necessary conveyances, as to subsequently acquired property. *Held*, that it became a valid lien upon any interest in real as well as personal estate, subsequently acquired by the company for the use of its road.

3. *Held*, therefore, that the plaintiff, who afterward sold to the company certain land for its road-bed, could not, as against the mortgage, set up a vendor's lien for purchase-money; especially after the mortgage had been foreclosed, and the road, etc., had passed into the hands of innocent purchasers.

APPEAL from the Circuit Court for *Fond du Lac* County.

On the first of April, 1856, the Milwaukee & Horicon Railway Company executed to one Lowry a mortgage of its road from Horicon to Berlin, the terms of which are recited in the opinion. At that time the road was constructed in fact over certain lands belonging to the plaintiff, but the company had not acquired the right of way. In June following, the plaintiff sold and conveyed to the company a strip five rods wide across his said lands, under and on each side of said road. The

Lowry mortgage was foreclosed in 1863, and the purchasers at the foreclosure sale afterward sold and conveyed their interest to the *Milwaukee & St. Paul Railway Company.* The consideration for plaintiff's aforesaid deed never having been paid, he brought this action in 1868 to enforce a vendor's lien therefor, making both of the above named companies parties defendant. The circuit court rendered a judgment for the plaintiff, and the *Milwaukee & St. Paul Railway Company* appealed.

*John W. Cary,* for appellant, contended that the mortgage, by clear construction, extended to subsequently acquired property, real as well as personal, and hence became a valid lien on the lands subsequently purchased from the plaintiff, superior to his lien for purchase-money. *Farmers' Loan & Trust Co. v. Fisher,* 17 Wis. 114; *Farmers' Loan & Trust Co. v. Commercial Bank,* 11 id. 207; *Same v. Same,* 15 id. 429; *Dinsmore v. Racine & Miss. R. R. Co.,* 12 id. 649. 2. The covenant for further assurance contained in the mortgage was equivalent to a covenant of seizin in the mortgagors, and was effectual to subject all after-acquired property to its lien, from the moment of its acquisition. Rawle on Covenants, 164–175, 341–346. 3. The plaintiff, by his silence, in suffering a foreclosure and sale, under the mortgage, to strangers, without giving notice of his equities, is now estopped from asserting a vendor's lien as against the defendant in this suit. *Bayley v. Greenleaf,* 7 Wheat. 46; *Burns v. Taylor,* 23 Ala. 255; 4 Kent's Com., 154 and notes.

*Gillett & Pier,* for respondent, insisted that the mortgage, as to subsequently acquired property, related only to *personalty;* and that it was not, in fact, competent for a railroad company to mortgage its property to be thereafter acquired. *State v. Mexican Gulf Railway Company,* 3 Rob. (La.) 513; 10 Ohio St. 525; 47 Pa. St. 255; 2 Redfield on Railways (3d ed.), 507.

COLE, J.  By its charter, the Milwaukee & Horicon Railway Company was expressly authorized to borrow money, and to make and execute in its corporate name all necessary writings, notes, bonds and other papers, and also to execute and deliver "such securities, in amount and kind," as might be deemed expedient to secure such loans. Sec. 21, chap. 450, Laws of 1852. It therefore had full power to make and deliver the mortgage to Lowry, bearing date April 1, 1856. By that instrument the company mortgaged all its road, from the junction thereof with the La Crosse road, in or near the village of Horicon, to a point in or near the village of Berlin, being about forty-two miles of road, "including the right of way and land occupied by said road, together with the superstructure and tracks thereon, and all rails and other materials used thereon, bridges, viaducts, culverts, fences, equipments, necessary depot grounds and buildings thereon," belonging to the mortgagor, with the rolling stock and personal property appertaining to that line of road, then belonging to the company or thereafter to be acquired, "and all future right thereto and interest therein to be acquired by the" corporation, together with the name and functions appertaining to the road, with its corporate rights and franchises.  The mortgage then, in express terms, covered the franchises and property, real and personal, belonging to the company, April 1, 1856, and also all future acquired real and personal property for that portion of its road; and this mortgage was executed by direct legislative authority conferred upon the corporation in its charter.  In the mortgage, the company, among other things, covenanted "to execute and deliver any further reasonable and necessary conveyance or conveyances of the premises, or any part thereof, to the said party of the second part," "for more fully carrying into effect" the trusts created, "particularly for the conveyance of any rights, interest or property subse-

quently to the date hereof acquired by said parties of the first part, and comprehended, or intended so to be, in the description and terms of this instrument."

Now, it appears that the plaintiff and wife, in June, 1856, sold and conveyed to the Milwaukee & Horicon Railroad Company the premises mentioned in the pleadings, and upon which a vendor's lien for the purchase-money is now sought to be enforced. It is difficult to see upon what principle the action can be maintained.

It is apparent that the Lowry mortgage purported to include the right of way across the plaintiff's land, which was the subject-matter of the conveyance from him to the company. It is true, the title to those premises was not in the company when the mortgage was executed.; but it is perfectly clear that it was the intention of the parties that the mortgage should become a lien upon any right or interest in real estate subsequently acquired for right of way, or necessary for the use of the road. It is insisted in the brief of the counsel for the plaintiff, that the instrument did not purport to mortgage future-acquired realty ; but a bare reference to the clauses which have been cited will show that this view is inadmissible. It obviously purports to convey as well the real and personal property belonging to the company at the time of the execution of the mortgage, and therein described, as all real and personal property subsequently acquired for the use of the road. The language employed is not fairly susceptible of any other construction. And, this being so, it is very manifest that when the company subsequently acquired an interest in these premises, from that moment the mortgage became a lien and charge upon them. *Farmers' Loan & Trust Company v. Fisher et al.*, 17 Wis. 114, and cases cited in the opinion ; also see *Miller v. R. & W. R. R. Co.*, 36 Vt. 452. And there is a still stronger reason for holding in this case that any after-acquired interest in real estate for the use of the track would

inure to the benefit of the mortgagee, and become vested in him, in view of the fact that the mortgage contains the covenant for further assurance above quoted. Could it with any justice be claimed that the Milwaukee & Horicon Railroad Company, after executing the mortgage with this covenant, might assert its title to the premises in question? It seems to us not, but that the company would be clearly estopped from saying that the mortgage did not become a lien upon them. But this is not the only difficulty in the way of the plaintiff in enforcing a vendor's lien upon the premises. The Lowry mortgage has been foreclosed in an action to which the Milwaukee & Horicon Railroad Company was made a party defendant. A foreclosure sale was had of all the property, corporate rights and franchises embraced in the mortgage. It appears that Hunt and Sage purchased the property at the foreclosure sale, and have conveyed it, without notice of any equities of the plaintiff in the premises, to the defendant company. Now, we suppose the purchaser at the foreclosure sale obtained whatever interest the Milwaukee & Horicon Railway Company had in the premises, as well as the rights and interest of the mortgagee under the mortgage, whatever they were. Such was the necessary effect of the foreclosure. And that it would be a violation of all principle to permit the plaintiff, after the foreclosure sale and at this late day, to enforce a vendor's lien for the consideration named in the deed given in June, 1856, really seems to us too plain for argument.

We think the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.* — So ordered.