## GALVESTON TERM.

### J. A. DUPREE v. R. H. McCLANAHAN.

(No. 37, Tex. L. J., p. 58.)

APPEAL from San Jacinto County. Opinion by WHITE, J.

§ **594.** *Mortgage upon an unplanted crop; validity of.*
Whether a mortgage upon an unplanted crop, executed
without reference to statutory provisions, will attach and
become valid as a lien when the crop comes into exist-
ence, is a question which has been fruitful of much dis-
cussion, and has been productive of some contrariety of
decision in the courts of the United States. It has never
before been presented for adjudication in this state. The
extent to which our courts have gone in this direction
may be found in Cook v. Steel, where it was held that
cotton planted was subject to a mortgage regardless of its
growth towards maturity. [42 Tex. 53.]

§ **595.** *Whatever may be the subject of an absolute sale
may be the subject of a mortgage.* It seems now to be
well settled as a general rule that whatever may be the
subject of an absolute sale may be the subject of a mort-
gage. [2 Story's Eq. Juris. § 1021; 4 Kent's Com. § 58,
side p. 144; 11 N. J. (3 Stock.) 539. As to what property
may be the subject of an absolute sale, Mr. Parsons says:
"The existence of the thing sold, or the subject matter
of the contract, is essential to the validity of the con-
tract." And again: "A mere contingent possibility,
not coupled with interest, is no subject of sale; as all the
wool one shall ever have, or the sheep which a lessee
has covenanted to leave at the end of an existing time.
If rights are vested or possibilities are distinctly con-
nected with interest or property, they may be sold."
[1 Pars. on Cont. pp. 522–3.] The thing sold must have

an actual potential existence. [2 Kent, 468.] "Things not yet in existence, which may be sold, are those which are said to have a *potential existence;* that is, things which are the natural product or expected increase of something already belonging to the vendor." [Benj. on Sales, 53.] "It is an elementary principle of the law of sales that a man cannot grant personal property to which he has no interest or title. To be able to sell property he must have a vested right in it at the time of the sale. Thus it has been held that a mortgage of goods which the mortgagor does not own at the time the mortgage is made, though he afterwards acquires them, is void. [Jones v. Richardson, 10 Met. 481.] The same principle is applicable to all sales of personal property. [Rice v. Stone, 1 Allen, 566; Head v. Goodwin, 37 Maine, 181.] It is equally as well settled that it is sufficient if the seller has a potential interest in the thing sold. But a mere possibility or expectancy of acquiring property, not coupled with any interest, does not constitute a potential interest in it within the meaning of this rule. The seller must have a present interest in the property of which the thing sold is the product, growth or increase. Having such interest, the right of the thing sold, when it shall come into existence, is a present vested right, and the sale of it is valid. Thus, a man may sell the wool to grow upon his own sheep, but not upon the sheep of another; or the crops to grow upon his own land, but not upon land in which he has no interest." [Low v. Pew, 108 Mass. 349–50, citing the authorities above and Bellows v. Wells, 36 Vt. 599; Van Hoozer v. Corey, 34 Barb. 9; Grantham v. Hawley, Hob. 132.]

In Brett v. Carter, 2 Lowell's Decis. (U. S. Dist. Ct.), p. 462, the learned judge, discussing a similar question, says: "Now the only decision I can find in equity in this state upon this subject certainly decides very distinctly that even in equity a mortgage of after-acquired chattels is invalid. [Moody v. Wright, 13 Met. 17.] In that case the court refused to follow the then recent

decision of Story, J., in Mitchell v. Winslow, 2 Story, 630, and relied largely on the *dictum* of a very distinguished judge, Baron Parke, who said in Mogg v. Baker, 4 M. & W. 349, that there was no such lien in equity. Some years after these decisions were rendered, the House of Lords unanimously followed the doctrine of Judge Story, and reversed a decision of Lord Campbell which had been founded on the *dictum* already referred to, and Baron Parke concurred in the reversal." [Holroyd v. Marshall, 10 H. of L. 191.] Still later these decisions have been repeatedly followed in England and this country. The following are some of these decisions cited by the learned judge, some earlier and some later than 13 Met. [Curtis v. Auber, 1 Jac. & W. 532; Ship Warre, In re, 8 Price, 269; Langton v. Horton, 1 Hare, 549; Douglas v. Russell, 4 Sim. 524; 1 Myl. & K. 428; Howe, In re, 1 Paige, 129; Holroyd v. Marshall, 10 H. of L. 191; Pennock v. Coe, 23 How. 117; Morrill v. Noyes, 56 Maine, 458; Pierce v. Emery, 32 N. H. 484; Benjamine v. Elmira R. R. Co. 49 Barb. 441; Philad. etc. Co. v. Woelpper, 64 Pa. St. 366; Phillips v. Winslow, 18 B. Mon. 431; Sillers v. Lester, 48 Miss. 513; Pierce v. Mil. R. R. Co. 24 Wis. 551.] And he proceeds to say: "Considering the decision by Judge Story in this circuit, and the reasons given by the courts of Massachusetts for not following it, and the entire consistency of all the recent decisions with Judge Story's views, and the disappearance of Baron Parke's *dictum*, I am not prepared to say that if the supreme judicial court were now asked to review their decision in Moody v. Wright, it is at all certain they would not reverse it, and under the circumstances I do not feel bound that that case furnishes a settled rule of property which I must follow. So far from that, I believe that the law of Massachusetts in equity is that a mortgage of after-acquired chattels is valid." In Barnard v. Norwich & Worcester R. R. Co. 4 Clifford R. 351, it is said: "No person can sell a thing he does not own, unless as the duly authorized agent of the owner. *Nemo dat quod non*

*habet.* Nor can he convey *in præsenti* property not in existence, the rule being that every such deed or mortgage is inoperative and void. Authorities to support these propositions are not wanting, but the law will permit the grant or conveyance to take effect upon property when brought into existence, and comes to belong to the grantor in fulfillment of an express agreement, if the agreement is founded on good and valuable consideration, unless it infringes some rule of law, or will prejudice the rights of third persons. [Pennock v. Coe, 23 How. 117.] Whenever the parties, by their contract, intend to create a lien or charge either upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto against the latter, and against all persons asserting a claim to the same under him, either voluntarily or with notice." [Mitchell v. Winslow, 2 Story, 644.] He also cites Seymour v. Railroad Co. 25 Barb. 284; Curtis v. Auber, 1 Jac. & W. 531; Langton v. Horton, 1 Hare, 556; Field v. Mayor, etc. of N. Y. 6 N. Y. 185.

The same question is ably discussed by Simrall, C. J., in Everman & Co. v. Robb, 52 Miss. 653, wherein it was held that " where a lessee holds for a term of years by a written lease, acknowledged and recorded, he holds such an interest in the land as will enable him to execute a valid mortgage, conveying the crops to be grown by him on the land in future years, and though the subject of the mortgage be a chattel not *in esse*, but a future acquisition, yet he has acquired such an interest in the soil as will enable him to sell the fruits of it afterwards to be produced." Butt v. Ellett, 19 Wall. 544, is cited by Judge Simrall as saying: " The mortgage clause could not operate as a mortgage, because the crops to which it relates were not then in existence. When the crops grew, the *lien* attached and bound them effectually from that time." To the same effect is Smith v. Atkins, 18 Vt. 465.

Applying these principles, which seem well established, to the facts of the case at bar, we do not think the court erred in holding that the mortgage executed by McClanahan attached as a valid lien when the crop was planted and came into existence.  Clark owned the land upon which the crop was expected to be raised, and, as we have seen, he had such a potential interest in the fruits of the soil as that his right would become vested so soon as such products might come into existence.

March 1, 1877.                                    Affirmed.